UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE R. HURTER,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:14-cv-05874-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

      Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *See Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court affirms defendant's denial.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      On June 1, 2006, plaintiff filed an application for SSI benefits, alleging disability as of November 24, 2001. Dkt. 12, Administrative Record (AR) 10. That application was denied initially on administrative review on October 18, 2006, and on reconsideration on February 13, 2007. *Id.* A hearing was held before an administrative law judge (ALJ) on September 24, 2008, at which plaintiff, represented by counsel, appeared and testified. AR 356-77.

      In a decision dated October 15, 2008, the ALJ determined plaintiff to be not disabled. AR

ORDER - 1

10-20. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 3, 2009, making that decision the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481. Plaintiff appealed that decision to this Court, arguing the ALJ erred in failing to find many of plaintiff's medical conditions to be non-severe, in evaluating the medical evidence in the record, in discounting plaintiff's credibility, in assessing her residual functional capacity (RFC), and in finding her to be capable of performing other jobs existing in significant numbers in the national economy. AR 400.

On August 30, 2010, the Court agreed the ALJ committed reversible error, but only on the basis that the ALJ should have obtained vocational expert testimony in light of the evidence in the record concerning plaintiff's non-exertional limitations, and remanded this matter to the Commissioner to obtain such testimony. AR 397-418. Plaintiff appealed the Court's decision and on January 6, 2012, it was affirmed by the Ninth Circuit. AR 445-55. In a notice of hearing dated January 11, 2011, the ALJ informed plaintiff that her hearing on remand was scheduled for February 18, 2011, in Seattle, Washington. AR 492. The ALJ sent plaintiff a reminder notice on February 4, 2011. AR 517.

Plaintiff's counsel, but not plaintiff, appeared at that hearing. AR 312, 351-55. Because this matter was still on appeal to the Ninth Circuit, however, the ALJ postponed the hearing. *Id.* In a notice of hearing dated April 11, 2012, the ALJ informed plaintiff that a second hearing had been scheduled for June 4, 2012, in Seattle, Washington. AR 527. In a letter dated June 1, 2012, plaintiff's counsel informed the ALJ that plaintiff was currently living in Puyallup, Washington, and that therefore her case needed to be transferred to the Social Security Administration's Tacoma Office of Disability Adjudication and Review (ODAR). AR 536. Plaintiff's counsel further informed the ALJ that he would make an appearance at the hearing, but made no mention

ORDER - 2

as to whether plaintiff herself also would appear. *Id.*

At the June 4, 2012 hearing, plaintiff did not appear. AR 344. A vocational expert did appear, however, and testified. AR 345-47. Although he denied the request to transfer plaintiff's case, the ALJ informed plaintiff's counsel that he would schedule a supplemental hearing for the purpose of having her appear and to address her claim of disability as it relates to the period of time subsequent to October 15, 2008, the date of the prior non-disability determination. AR 348, 552. The ALJ also issued a third notice of hearing dated June 4, 2012, informing plaintiff that a third hearing had been scheduled for July 9, 2012, in Seattle, Washington. AR 542.

At that hearing, plaintiff's counsel appeared, but plaintiff once more did not do so. AR 338-41. In a decision dated July 18, 2012,the ALJ stated that in light of this Court's decision upholding his prior findings concerning the medical evidence in the record, as well as plaintiff's credibility and RFC – which he found to be "the law of the case" – those portions of the record upon which those findings were based would not be revisited, and thus that only the evidence added to the record subsequent thereto would be considered. AR 312, 315, 322. The ALJ further stated that nothing in that new evidence warranted any change in those prior findings (AR 312), and therefore again determined plaintiff to be not disabled (AR 328-29).

On August 30, 2014, the Appeals Council declined to assume jurisdiction of this case. AR 280; 20 C.F.R. § 416.1484. On November 5, 2014, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 3. The administrative record was filed with the Court on May 18, 2015. Dkt. 12. As the parties have completed their briefing, this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the

ORDER - 3

ALJ erred: (1) in failing to provide plaintiff with a full and fair hearing; (2) in finding plaintiff's depression, anxiety, migraines, and sleep apnea to be non-severe impairments; (3) in evaluating the medical evidence in the record; (4) in discounting plaintiff's credibility; (5) in assessing plaintiff's RFC; and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore affirms the decision to deny benefits.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld.

ORDER - 4

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.   Full and Fair Hearing

Plaintiff argues the ALJ erred in failing to provide her with an opportunity to appear and testify about her symptoms and limitations subsequent to October 15, 2008, the date of the ALJ's prior decision. Specifically, she asserts that she lives in Puyallup, Washington, and therefore that under the Commissioner's Hearing, Appeals and Litigation Law Manual (HALLEX), her case should have been transferred to the Tacoma ODAR. *See* Dkt. 18, p. 4 (citing HALLEX I-3-7-42). The ALJ's refusal to transfer the case, she argues, resulted in her being denied a full and fair hearing. Plaintiff further argues that because the July 9, 2012 hearing transcript does not contain any discussion as to why she was not present at that hearing, at best it is unclear whether it was reasonable for the ALJ to refuse to offer her an additional hearing at which she would have the opportunity to testify. *Id.*

As defendant notes, the HALLEX "is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members," and "[a]s such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000). Plaintiff counters that the Commissioner's own ruling requires

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 5

that "adjudicators at all levels . . . follow agency policy, as set out in" the HALLEX. Dkt. 28, p. 2 (quoting Social Security Ruling (SSR) 13-2p, 2013 WL 621536). Whether or not the ALJ should have transferred the case pursuant to the HALLEX, as defendant notes that internal guidance tool does not have the force and effect of law, and thus is not binding on this Court.

In any event, as noted above plaintiff was given the opportunity to appear and testify at three different hearings. While the hearing transcripts may not definitively reveal why plaintiff failed to appear each time, other than the ALJ's one off the record comment neither is there any evidence that plaintiff was unable to attend the hearings held in Seattle.[2] Further, although the ALJ's comment that at the July 9, 2012 hearing plaintiff's counsel "conveyed that [plaintiff's] ride had 'fallen through'" may indicate an inability to attend *that* hearing (AR 313),[3] neither plaintiff nor her counsel ever provided the ALJ with any explanation to as to why she could not appear at the two earlier hearings.[4] Due process requires "meaningful notice and an opportunity to be heard" before a claim for disability benefits is denied. *Udd v. Massanari*, 245 F.3d 1096,

---

[2] Indeed, the February 18, 2011 hearing transcript indicates that plaintiff likely would have attended that hearing had it not been postponed:

> ALJ: We'll reschedule [the hearing]. I hope your claimant hasn't made the trip in here.
> ATTY: Well, I think she has but I might just call her and tell her she can turn around.

AR 355.

[3] On the other hand, given that the ALJ also commented that plaintiff's counsel "appeared to be amused by the news he conveyed" concerning the fact that plaintiff's ride had fallen though, it seems the ALJ instead very well may have found this stated reason for plaintiff's absence to be less than truthful. *Id.*

[4] Plaintiff argues the ALJ's failure to record the entire July 9, 2012 hearing – as evidenced by the absence of any mention in that hearing transcript of the statement the ALJ indicated plaintiff's counsel made – is itself error. It is not clear, though, whether that absence is merely because the alleged conversation occurred at a time when the hearing was not happening or to a failure to adequately record the hearing. Either way, the Court finds the ALJ did not commit any reversible error here. First, the alleged off-the-record comment from her counsel actually *helps* plaintiff, at least in terms of indicating she had a valid reason for not being at the July 9, 2012 hearing. Second, as discussed above, plaintiff did not offer any reason as to why she could not have attended the other two scheduled hearings, even though both were held in Seattle. And while it is true that the ALJ himself postponed the February 18, 2011 hearing for a reason other than plaintiff's absence, that still leaves the June 4, 2012, at which she could have appeared and testified but for unexplained reasons did not do so. As such, plaintiff has not established that she suffered any prejudice. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to the claimant or irrelevant to ALJ's ultimate decision).

ORDER - 6

1099 (9th Cir. 2001). Plaintiff received both here.

To the extent plaintiff is arguing that it was the ALJ's duty to investigate further as to the reasons for her failure to appear, the Court finds the ALJ had no such obligation. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). But here plaintiff points to no evidence or indication in the record that she had valid reasons for not appearing, yet was not given any meaningful opportunity to convey them to the ALJ. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate). Indeed, as noted above, the record indicates quite the opposite.

II.     The ALJ's Findings at Step Two

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling (SSR) 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841

ORDER - 7

F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

Here, the ALJ found plaintiff's "lack of mental health treatment strongly suggests that her mental impairments cause minimal functional limitations and are not severe." AR 317. Failure to seek treatment for an allegedly disabling impairment constitutes a valid basis for not crediting a claimant's claims in regard thereto. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain). Plaintiff argues the significant functional limitations assessed by Dr. Wingate belies this finding, but as discussed below the ALJ did not err in discounting those limitations.

Plaintiff also finds fault with the ALJ's determination that her sleep apnea and headaches were not severe or did not occur frequently enough to cause more than "minimal functional limitations." AR 316-17. Specifically, plaintiff asserts the ALJ cannot make this determination without providing her with the opportunity to describe the impact of those alleged impairments. As discussed above, though, plaintiff was given sufficient notice and opportunity to appear and testify to that effect, but did not do so. In addition, as the ALJ pointed out, plaintiff has not otherwise shown that the medical and other evidence in the record supports a finding that either

ORDER - 8

of these impairments have had more than a minimal impact on her ability to function. As such, the ALJ's step two determination was not in error.

III. <u>The ALJ's Evaluation of the Medical Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

ORDER - 9

the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff argues the medical evidence considered by the ALJ in his prior decision is consistent with the medical evidence added to the record subsequent to the date of that decision, and supports her testimony concerning her symptoms and limitations. The vast majority of both the older and newer evidence plaintiff cites, however, reveals at most the presence of symptoms and impairments, but fails to indicate – let alone establish – the existence of actual work-related limitations not already accounted for by the ALJ in his assessment of her RFC. Dkt. 18, pp. 5-14; *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Accordingly, the Court finds no error here.

With respect to new opinion evidence, plaintiff first takes issue with the ALJ's following findings:

> No weight is given to the January 2008 conclusion of Cleotilde Nimietz, PA-C, that the claimant is "severely limited" by her shoulder injury (Ex. 32F, p. 4). I note that this opinion predates the prior decision by ten months, and should have been submitted prior to the initial hearing. Furthermore, Ms. Nimietz's examination finding, that the claimant has limited left shoulder range of motion, does not support this severe functional limitation. Ms. Nimietz's opinions are not supported by objective imaging studies, which indicate mild to moderate problems (Ex. 30F, p. 1 and 3-4). Finally, I note that Ms. Nimietz is not an acceptable source of medical opinions under Social Security Administration regulations.

AR 326. Plaintiff argues none of these reasons form a valid basis for rejecting Ms. Nimietz's opinion. The Court agrees the mere fact that Ms. Nimietz is a not an acceptable medical source is not a sufficient reason for rejecting it. *See* SSR 06-03p, 2006 WL 2329939 *3 (providing that a physician's assistant is an "other medical source," who is "not technically deemed to be" an "acceptable medical source," but whose opinion nevertheless is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record).

Plaintiff also is correct that the ALJ appears to have erroneously determined that Ms. Nimietz offered her opinion in January 2008, and thus that it predates the ALJ's prior decision by ten months. Instead, it seems Ms. Nimietz offered that opinion in January 2009 – despite having dated her signature January 8, 2008 – since the evaluation form on which she recorded her findings was provided to her in October 2008. AR 628. That being said, the ALJ did not err in rejecting Ms. Niemitz's opinion on the basis that the severe functional limitations she assessed are unsupported by objective medical evidence. Although Ms. Niemitz's findings of limited range of motion and zero rotation in her shoulder do offer some support for her assessment (AR 626), the largely unremarkable imaging studies referred to by the ALJ contradict those findings

ORDER - 11

(AR 589-90, 626). *See Batson*, 359 F.3d at 1195. Since it is the sole duty of the ALJ to resolve conflicts and ambiguities in the evidence, the Court declines to find the ALJ erred in finding as he did here.

Plaintiff next argues the ALJ erred in finding as follows:

> I give limited weight to the finding that the claimant is limited to sedentary work in February 2012 (Ex. 39F, p. 1-6). This conclusion, made apparently by Dr. Louis Enkema, is based on the claimant's *mild* balance difficulties and moderate Meniere's symptoms and degenerative disc disease. This finding does not support such a severe functional restriction, and the evaluator noted that the "patient's exam is less definitive than I would expect for Meniere's disease" and she "needs accurate, appropriate diagnosis". The evaluator also stated that the claimant should be re-evaluated after within [sic] three weeks of starting treatment. This suggests that the claimant's limitations are temporary and could be resolved with treatment, and is not convincing support for the granting of Social Security benefits. The document is, read as a whole, tentative and equivocal.

AR 326 (emphasis in original) (internal footnote omitted). Again, the Court finds no error here. First, a treating physician's opinion may be rejected if inconsistent with clinical findings. *Batson*, 359 F.3d at 1195. The mild to moderate findings Dr. Enkema recorded do not as the ALJ noted support the significant functional limitations he assessed. AR 898-99. Second, it was reasonable for the ALJ to question the certainty of Dr. Enkema's opinion, given the fact that the statements Dr. Enkema made concerning the accuracy, appropriateness and definitiveness of his own diagnosis (AR 900). Third, it also was not unreasonable for the ALJ to find Dr. Enkema's suggestion that plaintiff should be re-evaluated after only three weeks of starting treatment, indicates her condition was temporary and resolvable.

Plaintiff challenges as well the ALJ's following findings:

> I give no weight to the assessment performed by Constantino Palaskas, M.D., in July 2012, or his statement in February 2012 that the claimant's symptoms are "debilitating" (Ex. 43F and Ex. 38F, p. 1). On the check-box form, which was provided by the claimant's attorney, Dr. Palaskas stated that the claimant has frequent Meniere's attacks and her prognosis is guarded. However, Dr.

ORDER - 12

> Palaskas indicates he had not seen the claimant since 2009, and he notes that one of the primary reasons she has appeared is to gather evidence for her disability claim. Further, he admitted to not recalling his discussions with the claimant, and he did not know the average frequency of her attacks. Furthermore, the treatment records discussed above show that the claimant's Meniere's exacerbations are infrequent and *are not confirmed* by objective findings. Dr. Palaskas's report does not include any assessment of ability to do work-related activities, which he indicates [the] claimant should obtain from her primary care provider. I note that he refers to her hearing issues as "fluctuating," which may be some indication that they are not reliable.

AR 326 (emphasis in original) (internal footnotes omitted). Although plaintiff is correct that Dr. Palaskas saw plaintiff in February 2012, and conducted an audiogram at the time (AR 853), the fact that he had not seen plaintiff for the some three years prior thereto, calls into question his statement that plaintiff's symptoms were "frequent enough to be debilitating on their own" (*id.*) as the ALJ noted, particularly since Dr. Enkema himself stated he did not recall any of his prior discussions with plaintiff (AR 956).

The Court does agree with plaintiff that absent "evidence of actual improprieties," the purpose for which Dr. Enkema's opinion was obtained is not a legitimate basis for rejecting it, and as there is no evidence of such improprieties, this was not a valid basis for rejecting that opinion. *Lester*, 81 F.3d at 832 (physician's findings entitled to no less weight when procured by the claimant than when obtained by the Commissioner). The Court also agrees with plaintiff that Dr. Enkema's reference to her hearing issues as fluctuating is not a proper reason for discounting his opinion, given that it may be entirely possible that someone with plaintiff's condition could have fluctuating symptoms that nevertheless have a significant impact on his or her functional capabilities. On the other hand, the objective evidence confirming Meniere's disease as plaintiff's diagnosis is less than definitive, as Dr. Enkema himself noted. Accordingly, for this and the other reasons discussed above, overall the ALJ did not err in his analysis here.

Lastly, plaintiff argues the ALJ erred in giving only "[l]ittle weight" to the March 2009

ORDER - 13

opinion of Terilee Wingate, Ph.D.:

> Dr. Wingate found that the claimant has moderate limitations of cognitive functioning and moderate to severe deficits of social functioning. I note that the claimant has sought only brief, remote treatment for her mental illness, and the record indicates that her functional limitations are almost entirely caused by her physical problems. Dr. Wingate's mental status examination was essentially normal, but for tearfulness, and she otherwise relied on subjective report and subjective inventory tools. As noted by the Court of Appeals (10A2) there is only [the] claimant's subjective complaints to support the notion of a mental impairment, and these impairments are only offered up in a secondary gain context. An isolated opinion does not constitute new and material evidence in the absence of corroborative underlying significant change, and the record does not show a significant change in the claimant's mental health.

AR 325 (internal footnotes omitted). Plaintiff argues the fact that she has obtained little mental health treatment is not a valid reason for rejecting Dr. Wingate's opinion, especially in light of her report at that time that she had "tried a couple of antidepressants [when] she separated from [her] spouse," but felt an increase in suicidal ideation. AR 636; *see* SSR 96-7p, 1996 WL 374186 *7 (providing that an ALJ must not draw any inferences about a claimant's symptoms and their functional effects from the claimant's failure to follow prescribed treatment, without first considering any explanations the claimant may provide or other information in the record which may explain that failure). But plaintiff does not appear to have otherwise reported such side effects to her medical providers or sought much in the way of other forms of mental health treatment. *Burch*, 400 F.3d at 681; *Meanal*, 172 F.3d at 1114. As such, the ALJ did not err in rejecting Dr. Wingate's opinion on this basis.

While it is true that Dr. Wingate noted some abnormal findings, overall her mental status examination produced largely unremarkable results. AR 634; *Batson*, 359 F.3d at 1195. Thus, the ALJ also was not remiss in finding Dr. Wingate's functional assessment to be largely based on plaintiff's subjective reporting, which as discussed further below the ALJ also properly found to

ORDER - 14

be not fully credible. *See Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)). Accordingly, as with the other medical opinion evidence in the record, the ALJ did not err in rejecting the opinion evidence from Dr. Wingate.

IV.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of

ORDER - 15

symptoms. *See id.*

The ALJ in this case discounted plaintiff's credibility on the basis that her allegations of disability were not consistent with her treatment records. AR 322-24. This was a proper basis upon which to do so. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). It is true as plaintiff points out that a claimant's subjective complaints may not be rejected solely because the degree of pain or limitation alleged is unsupported by the objective medical evidence in the record. *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995); *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Here, though, the ALJ also noted that plaintiff reported she did not use pain medications despite claiming to be disabled at least in part due to back and shoulder pain, and that her joint pain was considered to be treated and controlled. AR 323; *Burch*, 400 F.3d at 681; *Meanal*, 172 F.3d at 1114; *Morgan*, 169 F.3d at 599 (ALJ may discount claimant's credibility based on medical improvement).

The Court does agree with plaintiff that the ALJ erred in discounting her credibility based on her activities of daily living, as the record fails to show those activities were performed at a frequency or to an extent that necessarily indicates she has transferrable work skills or otherwise contradicts her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7. The ALJ also improperly relied on plaintiff's continued smoking because, unlike with respect to the ALJ's prior decision, the additional evidence submitted to the record indicates her smoking has decreased over time. AR 614, 664, 690, 859, 903, 905-06, 910, 915, 919-20, 923, 926-27, 929, 943-44; *see also Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (finding it extremely tenuous to infer from failure to quit smoking that a claimant lacks credibility, given the addictive nature of smoking and the likelihood that failure to quit could also be attributable to factors unrelated to the effect of smoking on health).

ORDER - 16

The Court further finds that to the extent the ALJ discounted plaintiff's credibility on the basis that her failure to appear at the June 4, 2012 meeting he erred, given that the record fails to show that her absence necessarily was "suspicious and likely willful and provocative." AR 322. Nevertheless, the fact that some of the ALJs's reasons for discounting plaintiff's credibility were improper does not render the ALJ's overall credibility determination invalid, as it is supported by the other valid reasons discussed above. *Tonapetyan*, 242 F.3d at 1148; *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

V.  The ALJ's RFC Assessment

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184, at *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *Id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Here, the ALJ found plaintiff had the residual functional capacity:

ORDER - 17

**to perform light work . . . with some additional limitations. The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk (with normal breaks) for a total of about six hours in an eight-hour workday and can sit (with normal breaks) for about six hours total in an eight-hour workday. The claimant is limited from work with unprotected heights and dangerous machinery. She should not perform work involving concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She cannot perform work involving concentrated exposure to noise or requiring the use of telephones.**

AR 320 (emphasis in original). Plaintiff argues that in light of the ALJ's errors in evaluating the medical evidence in the record and in assessing her credibility, the ALJ's RFC assessment also is erroneous. But because as discussed above the ALJ did not so err, plaintiff has failed to establish the ALJ improperly assessed her RFC.

VI.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that

ORDER - 18

description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the June 4, 2012 hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. *See* AR 345-46. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See* AR 345-47. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 327-28. Plaintiff argues the ALJ erred in so finding given his other alleged errors. Again, however, because plaintiff has failed to establish such errors, she also has failed to establish error at this step.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 25th day of January, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 19